IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Agracel, Inc., ) | |
| ) | **C.A. No. 6:22-3203-HMH** |
| Plaintiff, ) | |
| ) | **OPINION & ORDER** |
| vs. ) | |
| ) | |
| STS Group North America Inc. and ) | |
| STS Group AG, ) | |
| ) | |
| Defendants. ) | |

Before the court is the motion to dismiss Plaintiff Agracel Inc.'s ("Agracel") amended complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, alternatively, to transfer venue pursuant to Federal Rule of Civil Procedure 12(b)(3) filed by Defendants STS Group North America Inc. ("STS, Inc.") and STS Group AG ("STS AG"). For the reasons below, the court denies Defendants' motion.

**I. Background**

According to the amended complaint, "Agracel is a fully integrated and self-managed real estate company that specializes in single-tenant, net-leased industrial properties, subject to long-term leases." (Am. Compl. ¶ 7, ECF No. 11.) STS, Inc. supplies "plastic and composite parts for the automotive industry." (Id. ¶ 8, ECF No. 11.) In September 2019, Agracel and STS, Inc. "began exploring a transaction whereby STS, Inc. would engage Agracel to develop and construct a new facility (the "Facility") on a to-be-discovered property that was to be located in the Roanoke region of Virginia" (the "Project"). (Id. ¶ 9, ECF No. 11.) Agracel and STS, Inc. agreed to collaborate concerning the "design, development and construction of the Facility."

1

(Id. ¶ 10, ECF No. 11.)  The property would "be owned by Agracel and occupied by STS, Inc." (Id. ¶ 9, ECF No. 11.)  Agracel's representatives engaged in the Project were largely located in its Greenville, South Carolina Southeast Region office, which hosted multiple meetings between Agracel and STS, Inc. during the parties' negotiations.  (Am. Compl. ¶ 11, ECF No. 11); (Resp. Opp'n Mot. Dismiss Ex. 1 (Jason Vaughn Decl. ¶¶ 11, 13-14), ECF No. 22.)  Further, Agracel contends that Defendants conducted "other significant communications" with Agracel's representatives in Greenville, South Carolina regarding the Facility.  (Am. Compl. ¶ 11, ECF No. 11.)

The Project was on hold between March 2020 and June 2021.  (Id. ¶¶ 13-15, ECF No. 11.)  STS, Inc. selected a site in Wythe County, Virginia (the "Property") for the Facility on March 21, 2021.  (Id. ¶ 16, ECF No. 11.)  On November 22, 2021, STS, Inc. informed Agracel that it was ready to move forward with the Project.  (Id. ¶ 22, ECF No. 11.)  On December 28, 2021, Agracel and STS, Inc. entered into an indemnification agreement "wherein the parties agreed that Agracel would engage third parties to conduct [a] topographical survey, geotechnical analysis, environmental review, and due diligence for the Property and interim design and engineering services for the Facility."  (Id. ¶ 28, ECF No. 11.)  Due to increasing construction costs, STS, Inc. later agreed to a redesign of the Facility in March 2022.  (Am. Compl. ¶ 35, ECF No. 11.)  On March 15, 2022, Agracel and STS, Inc. entered into a second indemnification agreement related to the design of the Facility.  (Id. ¶ 36, ECF No. 11.)  The next day, March 16, 2022, Agracel and STS, Inc. entered into a third indemnification agreement regarding Agracel's procurement of roofing materials for the Facility.  (Id. ¶ 37, ECF No. 11.)  On April 19, 2022, Agracel and STS, Inc. entered into a fourth indemnification agreement for the joist and deck materials for the facility.  (Id. ¶ 39, ECF No. 11.)

A few days later, on April 27, 2022, Agracel and STS, Inc. entered into a "Build to Suit" lease, and STS AG executed a guaranty for the lease. (Id. ¶¶ 9, 40, 42, ECF No. 11.) Agracel alleges that costs for the Project substantially increased due to certain issues, which resulted in a cost increase of $12,117,500.00 more than its previous estimate. (Am. Compl. ¶ 52, ECF No. 11.) However, on June 14, 2022, "STS, Inc. advised Agracel that the Facility would have to be built for $25,000,000.00." (Id. ¶ 53, ECF No. 11.) Agracel submits that, even though it has proposed several options to bring the Facility within the $25,000,000 budget, STS, Inc. has not responded. (Id. ¶¶ 53-54, ECF No. 11.) Agracel and STS, Inc. have been unable to agree on "Final Plans for the Facility as required by the Lease." (Id. ¶ 55, ECF No. 11.)

On September 20, 2022, Agracel filed a complaint asserting claims for breach of the lease and indemnification agreements against STS, Inc., breach of guaranty as to STS AG, and an alternative claim for declaratory judgment against both Defendants. (Compl., ECF No. 1.) After obtaining an extension of time to serve the complaint, Agracel filed an amended complaint on February 8, 2023. (Am. Compl., ECF No. 11.) In the amended complaint, Agracel alleges as follows:

> Despite notice of default and an opportunity to cure having been provided by Agracel to STS, Inc., STS, Inc. has failed and refused and continues to fail and refuse[ ] to perform its obligations under the Lease and, therefore, breached and is in default of its contractual obligations under the Lease in the following respects:
> (a)     Failing to work in good faith to resolve any proposed changes or modifications to the 70% plans submitted in accordance with Section 2(c)(ii) of the Work Letter . . . .;
> (b)     Failing to work with Agracel so that Agracel can make adjustments to the 70% Plans through value engineering and/or scope reduction to meet any budgetary requirements of STS, Inc. in accordance with Section 3(d) of the Work Letter;
> (c)     Failing to use good faith efforts to work with Agracel to revise the 70% Plans such that the work done in accordance with such plans can be completed within a budget of $25,000,000.00; and

3

>   (d)     Failing to agree to increase the budget for the Project such that the Facility can be completed in accordance with the 70% Plans submitted . . . .

(Id. ¶ 62, ECF No. 11.)  Further, Agracel alleges that STS AG breached the lease guaranty, which "guaranteed full and complete payment of all amounts owed by STS, Inc. under the Lease and Indemnification Agreements, including attorneys' fees, and other costs and expenses incurred by Agracel." (Am. Compl. ¶ 67, ECF No. 11.).  In addition, Agracel submits that STS, Inc. has failed "to perform [its] obligations under the Indemnification Agreements." (Id. ¶ 75, ECF No. 11.)

On April 17, 2023, Defendants filed the instant motion to dismiss.  (Mot. Dismiss, ECF No. 20.)  Agracel filed a response in opposition on May 1, 2023.  (Resp. Opp'n Mot. Dismiss, ECF No. 22).  Defendants replied on May 8, 2023.  (Reply, ECF No. 23).  This matter is now ripe for decision.[1]

## II. Discussion

Defendants move to dismiss Agracel's amended complaint for lack of personal jurisdiction and improper venue, or alternatively, to transfer venue to either the Eastern District of Michigan or the Western District of Virginia pursuant to 28 U.S.C. § 1404(a).  (Mot. Dismiss, ECF No. 20.)

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction.  "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the

---

[1] Under Local Rule of Civil Procedure 7.08, the court may decide motions without a hearing.

motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016). In deciding whether the plaintiff has made such showing, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). The court will not, however, "credit conclusory allegations or draw farfetched inferences." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 405 (D.S.C. 2012) (quoting Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. 2000) (unpublished)).

Broadly speaking, personal jurisdiction refers to "the court's power to exercise control over the parties." Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979). A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Where, as here, the forum state's long-arm statute extends to the limits of federal due process, the two-part inquiry collapses into one: whether the court's exercise of personal jurisdiction satisfies the Fourteenth Amendment's Due Process Clause. Foster v. Arletty 3 SARL, 278 F.3d 409, 414 (4th Cir. 2002). The Fourteenth Amendment prevents a federal court from exercising jurisdiction unless the defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable' . . . and 'does not offend traditional notions of fair play and substantial justice.'" Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Int'l Shoe Co. v. Washington, 326

5

U.S. 310, 316-17 (1945)).

The Supreme Court has recognized two types of personal jurisdiction: general and specific. Id. General jurisdiction attaches when a defendant's connections with the forum "are so continuous and systematic as to render them essentially at home in the forum State." BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017) (internal quotation marks omitted). Save for the "exceptional case," a corporate defendant is "at home" only in its "place of incorporation and principal place of business." Daimler AG v. Bauman, 571 U.S. 117, 137, 139 n.19 (2014). Both STS, Inc. and STS AG maintain their principal place of business in Michigan. (Mot. Dismiss Ex. 1 (Buniato Decl. ¶¶ 4, 6), ECF No. 20-1.) Further, STS, Inc. is incorporated in Delaware, and STS AG is a German company. (Id. Ex. 1 (Buniato Decl. ¶¶ 4, 6), ECF No. 20-1.) As a result, neither Defendant is subject to general jurisdiction in South Carolina.

The second type of personal jurisdiction – specific jurisdiction – exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). To determine whether specific jurisdiction exists, courts in the Fourth Circuit consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002)). "The plaintiff must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

For the first prong, a defendant has purposefully availed itself of the benefits and protections of the forum state's law if "the defendant deliberately has engaged in significant

6

activities within [the forum]" or "has created continuing obligations between [itself] and residents of the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) (internal quotation marks omitted). This purposeful-availment standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," or due to "the unilateral activity of another party or a third person." Id. at 475 (internal quotation marks omitted). The Fourth Circuit has enumerated several nonexclusive factors to consider when evaluating the first prong, including:

> [1] whether the defendant maintains offices or agents in the forum state; [2] whether the defendant owns property in the forum state; [3] whether the defendant reached into the forum state to solicit or initiate business; [4] whether the defendant deliberately engaged in significant or long-term business activities in the forum state; [5] whether the parties contractually agreed that the law of the forum state would govern disputes; [6] whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; [7] the nature, quality and extent of the parties' communications about the business being transacted; and [8] whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations and formatting omitted).

For the second prong – whether the plaintiff's claims arise out of or relate to the defendant's activities directed at the forum – "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 582 U.S. 255, 262 (2017) (internal quotation marks omitted and alteration in original). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id.

At the final prong, the court considers whether the exercise of jurisdiction "would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l

Shoe, 326 U.S. at 320). In doing so, the court weighs "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001) (quoting Burger King, 471 U.S. at 477).

Applying these principles, that court finds that Agracel has established a prima facie case that Defendants are subject to personal jurisdiction in South Carolina. Defendants have submitted the affidavit of Alberto Buniato ("Buniato"), CEO of STS AG, stating that STS, Inc. had a one-day meeting in Greenville, South Carolina on June 1, 2022, with one STS, Inc. representative. (Mot. Dismiss Ex. 1 (Buniato Aff. ¶ 15), ECF No. 20-1.) Otherwise, Buniato represents that Defendants' contacts with Agracel in South Carolina "were through email, telephone, or other electronic means" from Troy, Michigan. (Id. Ex. 1 (Buniato Aff. ¶¶ 17, 18), ECF No. 20-1.) Further, Buniato avers that all of the relevant contract agreements were "negotiated, drafted, and executed" by Defendants in Michigan. (Id. Ex. 1 (Buniato Aff. ¶ 12), ECF No. 20-1.)

Agracel has submitted the declaration of Jason Vaughn ("Vaughn"), its Regional Business Director for the Southeast Region, which covers North Carolina, South Carolina, Georgia, and Virginia. (Resp. Opp'n Mot. Dismiss Ex. 1 (Vaughn Decl. ¶ 3), ECF No. 22-1.) Contrary to Defendants' assertions, Vaughn states that STS, Inc. made multiple visits to South Carolina concerning the Project. (Id. Ex. 1 (Vaughn Decl. ¶ 11), ECF No. 22-1.) The court must "assume the credibility of [Agracel's] version of the facts, and . . . construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [Agracel]."

8

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014).  Specifically, Agracel alleges that Chip Vogel ("Vogel"), whose email signature block identified him as "Vice President of Operations - STS USA, STS Group AG," and who was in charge of the project for STS, Inc. and STS AG, traveled to Greenville, South Carolina on March 12, 2021, for a one-day meeting to tour other recently completed projects.  (Id. 3 & Ex. 1 (Vaughn Decl. ¶ 11(a)), ECF Nos. 22 & 22-1.)  After STS, Inc. requested another meeting, Vogel traveled to Greenville, South Carolina a second time for three more days of meetings (March 24-26, 2021) regarding "Project specifications, financials, and plans for next steps."  (Id. Ex. 1 (Vaughn Decl. ¶ 11), ECF No. 22-1.)  Vaughn submits that in addition to Vogel, the following people representing STS, Inc. and STS AG were present via videoconference:

- Eric Morovan, VP Research and Development, STS Group AG;
- George Xu, Business Development NA, STS Group AG;
- Thierry Chirol, Technologies Manager, STS Composites France; and
- Richard Paul, CFO Business Group STS Plastics *chez* STS Group AG.

(Id. 11 & Ex. 1 (Vaughn Decl. ¶ 11(b)), ECF Nos. 22 & 22-1.)  Lastly, Agracel alleges that in June 2022, another meeting was held in Greenville, South Carolina at the request of Flavio Stedile, Jr. ("Stedile"), "Chief Operating Officer – USA for Adler Pelzer Group, on behalf of 'STS/APG.'"[2]  (Id. 4 & Ex. 1 (Vaughn Decl. ¶ 11(c)), ECF No. 22-1.)  Agracel submits that Adler Pelzer Group acquired part of STS AG in 2021.  (Resp. Opp'n Mot. Dismiss 4, Ex. B (Press Release), ECF Nos. 22, 22-2.)

In addition, Vaughn states that

> STS frequently sent emails to Agracel personnel located in South Carolina and initiated telephone calls with Agracel personnel in Greenville, South Carolina, including a call from Mr. Buniato to Richard Blackwell, VP of Real Estate in

---

[2] Defendants agree that this meeting was on behalf of STS, Inc.  (Mot. Dismiss Ex. 1 (Buniato Aff. ¶ 15), ECF No. 20-1.)

9

>Agracel's Greenville, South Carolina office. Additionally, meetings were conducted via videoconference, where Agracel personnel attended from Agracel's South Carolina office.

(Id. Ex. 1 (Vaughn Decl. ¶ 12), ECF No. 22-1.) Agracel submits that its work on the Project was primarily managed and coordinated by Agracel personnel in Greenville, South Carolina. (Id. Ex. 1 (Vaughn Decl. ¶ 13), ECF No. 22-1.) Agracel further submits that three of the four indemnification agreements and the lease executed by STS, Inc., as well as the lease guaranty executed by STS AG, were drafted by Agracel in Greenville, South Carolina. (Id. Ex. 1 (Vaughn Decl. ¶¶ 15-16), ECF No. 22-1.)

Based on the foregoing, Agracel has sufficiently alleged jurisdictional facts to show that STS, Inc. deliberately engaged in significant business activities in South Carolina concerning the Project.

As for STS AG, it argues that its execution of the guaranty containing a Virginia choice-of-law provision is insufficient to subject it to personal jurisdiction in South Carolina. (Reply 3, ECF No. 23). STS AG is correct that "the mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum." State Bank of Alleghenies v. Hudnall, No. 94-1809, 1995 WL 469445, at *2 (4th Cir. Aug. 9, 1995) (unpublished). However, the court finds that the "nature and level of" STS AG's contacts with South Carolina are sufficient to establish purposeful availment at this stage. Id. Agracel has submitted evidence that STS AG did more than just execute a guaranty: STS AG's representatives participated in three days of meetings in March 2021 with Agracel representatives located in South Carolina via video conference and had other significant contacts with Agracel throughout the Project. Further, Vogel's email signature block reflects that he was affiliated with both STS, Inc. and STS AG, and Agracel submits that Vogel was in charge of the project for both

10

Defendants. This is evidence that, at a minimum, Vogel was an apparent agent of STS AG when he traveled to South Carolina on multiple occasions to meet with Agracel representatives.[3] See State Bank of Alleghenies, 1995 WL 469445, at *2 (finding defendant who executed guaranty subject to personal jurisdiction where defendant "acted with at least apparent authority" for the party on whose behalf the guaranty was executed); CresCom Bank v. Terry, No. 2:12-cv-00063-PMD, 2012 WL 3115929, at *3 (D.S.C. July 31, 2012) (unpublished).

Defendants' contacts with South Carolina related to the Project cannot be described as random or fortuitous. Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012) ("We have found purposeful availment where a defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.") Defendants contend that "STS[,] Inc. and Agracel's relationship was not a joint enterprise to conduct business in the State of South Carolina." (Reply 5, ECF No. 23.) This argument misses the mark. Agracel has submitted prima facie evidence that Defendants collaborated extensively with Agracel representatives in South Carolina, as evidenced by the multiple in-person visits that Defendants' agents or apparent agents made to Greenville, South

---

[3] "A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts." Frasier v. Palmetto Homes of Florence, Inc., 473 S.E.2d 865, 867 (S.C. Ct. App.1996) "Under South Carolina law, [t]he elements which must be proven to establish apparent agency are: (1) that the purported principal consciously or impliedly represented another to be his agent; (2) that there was a reliance upon the representation; and (3) that there was a change of position to the relying party's detriment." Froneberger v. Smith, 748 S.E.2d 625, 630 (S.C. Ct. App.2013) (citing to Graves v. Serbin Farms, Inc., 409 S.E.2d 769, 771 (1991)). "Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him." Id. (citing to Frasier, 473 S.E.2d at 867–68.) "Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief." Frazier, 473 S.E.2d at 868.

11

Carolina in connection with the Project. See e.g., Grayson Consulting, Inc. v. Cathcart, No. 2:07-CV-00593-DCN, 2013 WL 6490175, at *5 (D.S.C. Dec. 10, 2013) (finding purposeful availment where, even though the defendant "maintain[ed] neither an office nor an agent in South Carolina and own[ed] no property in the state," it "frequently corresponded" with a South Carolina-based accountant "regarding business transactions . . . implicated in [the] litigation," traveled to South Carolina to meet with the accountant, and communicated directly with executives of the company for which he worked).

Based on the foregoing, the court finds that, under the prima facie evidence standard, Agracel has sufficiently satisfied its burden of showing that Defendants have purposefully availed themselves of the benefits and protections of South Carolina's laws.

Next, with respect to the second prong, Agracel's claims plainly arise out of or relate to Defendants' contacts with South Carolina.

Lastly, the exercise of personal jurisdiction comports with "fair play and substantial justice." Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320). The reasonableness prong "protects a party from litigation so gravely difficult and inconvenient that the party unfairly is at a severe disadvantage in comparison to its opponent." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012). Defendants have failed to show that litigating in South Carolina would be unduly burdensome. Defendants engaged Agracel and repeatedly traveled to South Carolina to meet with Agracel representatives regarding this Project. In addition, while Michigan has an interest in this controversy given that STS, Inc. has its principal place of business in Troy, Michigan, South Carolina has an equal, if not greater, interest in this litigation given that Agracel's Southeast Region office that performed substantial work on the Project is located in Greenville, South Carolina.

In sum, looking at the evidence in the light most favorable to the non-moving party, Agracel has made a prima facie showing of personal jurisdiction over Defendants. Defendants' motion to dismiss for lack of personal jurisdiction is therefore denied.

### B. Improper Venue

Defendants also move to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, arguing that this District is an improper venue under 28 U.S.C. § 1391(b)(2). "When a defendant objects to venue under Rule 12(b)(3), plaintiff bears the burden of establishing that venue is proper." Motley Rice, LLC v. Baldwin & Baldwin, LLP, 518 F. Supp. 2d 688, 691 (D.S.C. 2007). In the absence of an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." Stone v. Wells Fargo Bank, N.A., 361 F. Supp. 3d 539, 549 (D. Md. 2019). "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff," Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012), and may "freely consider evidence outside the pleadings," Sucampo Pharmaceuticals, Inc. v. Astellas Pharm., Inc., 471 F.3d 544, 550 (4th Cir. 2006).

Agracel asserts that venue is proper in this District under § 1391(b)(2), which states that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Notably, § 1391(b)(2) does not require venue "in the district where the most substantial portion of the events occurred, nor does it require a [party] to establish that every event that supports an element of a claim occurred in the district where venue is sought." Modaressi v. Vedadi, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) (emphasis in original). In fact, "'[v]enue may be proper even if a greater part of the events giving rise to a claim happened in

13

another forum.'" Wenzel v. Knight, No. 3:14CV432, 2015 WL 222179, at *1 (E.D. Va. Jan. 14, 2015) (unpublished) (quoting City of New York v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005)). As set forth above, substantial events giving rise to the claims in this case occurred in South Carolina, thereby rendering venue in this district proper.

Accordingly, Defendants' motion to dismiss for improper venue is denied.

### C. Transfer Venue

Lastly, Defendants move to transfer the case to the Eastern District of Michigan or, in the alternative, the Western District of Virginia pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court. In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984). A motion to transfer venue requires the court to engage in an "individualized case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). When undertaking this individualized analysis, courts weigh the following factors:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Landers v. Dawson Constr. Plant, Ltd., Nos. 98-2709, 98-2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999) (unpublished). Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff. Phillips v. S. Gumpert Co., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986). This

14

burden, however, is relaxed when the "plaintiff sues in a forum which has no discernible connection with the controversy." DeLay & Daniels, Inc. v. Allen M. Campbell Co., 71 F.R.D. 368, 371 (D.S.C. 1976). Moreover, transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other. See id. at 372.

Defendants submit that this case should be transferred to Eastern District of Michigan because it is more convenient for them and provides easy access to evidence relevant to the dispute. (Mem. Supp. Mot. Dismiss 19, ECF No. 20-2.) In this case, the first factor does not favor transfer since the sources of proof and witnesses are located in Michigan, South Carolina, and Virginia. Next, although Michigan may be a more convenient forum for Defendants, South Carolina – Agracel's chosen forum – is more convenient to Agracel. A plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate," Trustees of the Plumbers and Pipefitters National Pension Fund v. Plumbing Service, Inc., 791 F.3d 436, 444 (4th Cir. 2015), "especially where the chosen forum . . . bears a substantial relation to the cause of action," Heinz Kettler GMBH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010). As set forth more fully above, South Carolina bears a substantial relation to the claims raised in this case. Agracel submits that it largely designed and executed the Project through its representatives located at its Southeast Office in Greenville, South Carolina, and that Defendants' representatives traveled on multiple occasions to South Carolina for meetings specifically concerning the Project. (Resp. Opp'n Mot. Dismiss Ex. 1 (Vaughn Decl. ¶¶ 11, 13-14), ECF No. 22-1.) Finally, Defendants do not address the availability of compulsory process or the cost of obtaining witness attendance factors.

At bottom, having considered all of the factors, transferring this case to the Eastern District of Michigan would result in shifting the burden from one party to another, which is an improper basis to transfer venue under § 1404(a).

Alternatively, Defendants argue that the case should be transferred to the Western District of Virginia because (1) the Property and improvements are located in Virginia, (2) Virginia is a bit closer to Michigan than South Carolina, (3) Virginia law would apply to the lease guaranty and quality of construction issues, and (4) certain unidentified, nonparty witnesses are located in Virginia. (Mem. Supp. Mot. Dismiss 21, ECF No. 20.) However, the Western District of Virginia, the location of the Facility, would be less convenient for all parties in this contract dispute, as Agracel's party witnesses, Defendants' party witnesses, and the documentary evidence are located outside of Virginia. Moreover, Defendants have raised no argument that a jury view of the Property would be needed.

After weighing the applicable § 1404(a) factors, the court finds that Defendants have failed to meet the heavy burden of showing that Agracel's choice of forum should be disturbed. Thus, Defendants' motion to transfer venue is denied.

It is therefore

**ORDERED** that Defendants' motion to dismiss, or, alternatively, to transfer venue, document number 20, is denied.

**IT IS SO ORDERED.**

                                          s/Henry M. Herlong, Jr.
                                          Senior United States District Judge

Greenville, South Carolina
May 18, 2023